# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Michael A. Klatte, *et al.*,

          Plaintiffs,

v.

Buckman, Buckman & Reid, Inc.,

          Defendant.

Civ. No. 13-3109 (RHK/SER)
**MEMORANDUM OPINION AND ORDER**

---

Donald R. McNeil, Jr., Heley, Duncan & Melander, PLLP, Minneapolis, Minnesota, Michael S. MacDonald, Law Office of Michael S. MacDonald, Sunfish Lake, Minnesota, for Plaintiffs.

Margaret R. Ryan, Jacalyn N. Chinander, Meagher & Geer, PLLP, Minneapolis, Minnesota, Mark J. Astarita, Sallah Astarita & Cox, LLC, Verona, New Jersey, for Defendant.

## INTRODUCTION

This fraudulent-transfer action comes before the Court on the Motion of Defendant Buckman, Buckman & Reid, Inc. ("Buckman") to transfer to the United States District Court for the District of New Jersey. For the reasons that follow, the Court will grant the Motion.

## BACKGROUND

This case arises out of the alleged mismanagement of retirement funds entrusted to Leonard Demers, a New York-based investment adviser who worked for Mercer Capital, Ltd. ("Mercer Capital"), a broker-dealer headquartered in New York City. Plaintiffs are Duane and Sheila Stolpe ("the Stolpes") and Michael Klatte, all Minnesota residents,

along with several limited partnerships and trusts affiliated with them. They allege that despite knowing the Stolpes and Klatte were retired and required conservative management of their funds, Demers engaged in numerous high-risk transactions with their money, resulting in losses exceeding $2 million. As a result, the Stolpes and Klatte each commenced a FINRA[1] arbitration in Minnesota against Demers and Mercer Capital. The arbitrations were successful, and the Stolpes and Klatte were awarded more than a million dollars in damages.

Plaintiffs then attempted to enforce the arbitration awards against Mercer Capital but were "surprised" to discover it "had no assets and . . . was insolvent." (Compl. ¶ 37.) They later learned that following Demers's death in 2008, "the assets and property of Mercer Capital had been transferred to Buckman, upon information and belief, for less than reasonably equivalent value, if any." (Id. ¶ 38.) Buckman is a New Jersey corporation with its principal place of business in that state. (Id. ¶ 1.) According to Plaintiffs, it is simply a continuation of Mercer Capital, and the transfer of assets to it occurred "solely to avoid the satisfaction of the judgments from the Stolpe and Klatte FINRA Actions." (Id. ¶ 42.)

Plaintiffs commenced this action against Buckman on October 11, 2013, in the Washington County, Minnesota District Court, asserting claims for fraudulent transfer, "successor liability," and breach of contract. Buckman later removed the action to this

---

[1] FINRA, the Financial Industry Regulatory Authority, is the successor to the National Association of Securities Dealers (NASD). See Bakas v. Ameriprise Fin. Servs., Inc., 651 F. Supp. 2d 997, 1003 (D. Minn. 2009) (Kyle, J.). It is a congressionally authorized self-regulatory organization that oversees and regulates the securities industry in the United States. See http://www.finra.org/AboutFINRA/ (last visited February 3, 2014).

Court and now moves to transfer to the District of New Jersey. Its Motion has been fully briefed and is ripe for disposition.

## STANDARD OF REVIEW

Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A court faced with a motion to transfer, therefore, must undertake a two-part inquiry. "The initial question . . . is whether the action might have been brought in the proposed transferee district. If so, the Court must [then] consider the convenience and interest of justice factors." Austin v. Nestle USA, Inc., 677 F. Supp. 2d 1134, 1136 (D. Minn. 2009) (Kyle, J.) (citation omitted).

As the text of Section 1404(a) makes clear, three general factors inform whether a district court should grant a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. See Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). A district court may also consider any other factors it finds relevant when deciding whether transfer is warranted. In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010) (*per curiam*); Terra Int'l, 119 F.3d at 691. There is no precise mathematical formula to be employed when balancing these factors, and a district court enjoys "much discretion" when deciding whether to grant a motion to transfer. Id. at 697. Courts must be cognizant, however, that transfer motions "should not be freely granted." In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir. 1982) (*per curiam*), abrogated on other grounds by Mo. Hous. Dev. Comm'n v. Brice, 919 F.2d

1306 (8th Cir. 1990). A "heavy" burden rests with the movant to demonstrate why a case should be transferred. E.g., Integrated Molding Concepts, Inc. v. Stopol Auctions L.L.C., Civ. No. 06-5015, 2007 WL 2263927, at *5 (D. Minn. Aug. 6, 2007) (Schiltz, J., adopting Report & Recommendation of Erickson, M.J.); Radisson Hotels Int'l, Inc. v. Westin Hotel Co., 931 F. Supp. 638, 641 (D. Minn. 1996) (Kyle, J.). To satisfy that "heavy" burden, the movant must demonstrate that the relevant factors weigh "strongly" in its favor. Id.

**ANALYSIS**

As noted above, the first question to be answered when determining if transfer is warranted is whether this action "might have been brought" in the District of New Jersey. Insofar as no party has argued otherwise, and given that Buckman is a New Jersey corporation, it is clear that this action "might have been brought" in that state. See CSI Tech., Inc. v. Commtest Instruments Ltd., Civ. No. 08-450, 2008 WL 4057546, at *2 & n.4 (D. Minn. Aug. 26, 2008) (Kyle, J.) (action "might have been brought" where defendant was subject to personal jurisdiction and venue was proper under 28 U.S.C. § 1391). Accordingly, the Court will proceed to the second question: do the § 1404(a) factors favor transfer? Under the circumstances here, the Court concludes this question must be answered in the affirmative.

Convenience of the parties. There does not appear to be any significant dispute that the convenience-of-parties factor is neutral. That is, New Jersey would be more convenient than Minnesota for Buckman, while Minnesota would be more convenient than New Jersey for Plaintiffs. Buckman has no offices here and its principals, who will

testify in discovery and at trial as to the relationship (or lack thereof) between it and Mercer Capital, are all located in New Jersey. (Buckman Aff. ¶ 26.) Moreover, relevant documents possessed by Buckman, if any, are outside of Minnesota. Accordingly, litigating here would be both disruptive and expensive for it. (Id. ¶ 18.)[2]

Along the same lines, the Court notes that the Stolpes and Klatte, the primary Plaintiffs, are individuals of advanced age who reside in Minnesota. Accordingly, it seems fairly apparent that litigating here would be easier and less costly for them.[3]

At bottom, there are thumbs pressing on both sides of the party-convenience scale. This factor is in equipoise.

Convenience of witnesses. The convenience-of-witnesses factor generally is regarded as the most important in the inquiry. E.g., Austin, 677 F. Supp. 2d at 1138. In analyzing this factor, the Court "must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." Reid-Walen v. Hansen, 933 F.2d 1390, 1396 (8th Cir. 1991). The focus is on non-party witnesses, since "it is generally assumed that witnesses within the control of

---

[2] Plaintiffs note that Buckman has registered to do business in Minnesota (and all other 49 states) and, by doing so, consented to being sued here. (Mem. in Opp'n at 9.) But this raises the specter of *jurisdiction*, not *venue*; that Buckman has consented to suit in Minnesota does not answer whether it is *convenient* for it to litigate in this state. See Terra Int'l, 119 F.3d at 695 (undertaking § 1404(a) analysis despite forum-selection clause in parties' agreement, as clause was simply "one factor, albeit a very important one, in the overall transfer analysis").

[3] The Court notes, however, that despite submitting a lengthy Affidavit opposing the instant Motion (Doc. No. 18), Duane Stolpe nowhere asserts that litigating in New Jersey would be inconvenient. Nor has Klatte averred that transfer to New Jersey would be inconvenient; in fact, he has submitted no evidence in opposition to the instant Motion.

the party calling them, such as employees, will appear voluntarily in a foreign forum." Austin, 677 F. Supp. 2d at 1138 (citation omitted).

Here, Plaintiffs' claims are predicated on a (supposed) fraudulent transfer of Mercer Capital's assets to Buckman. Accordingly, erstwhile Mercer Capital employees with knowledge of the relationship between the two entities will be critical non-party witnesses in this case. And Buckman has identified three such individuals – Anthony Salino and Andrew Dorman, former owners of Mercer Capital, along with Christopher Marnelego, manager of the Mercer Capital branch from which Demers worked – who will testify regarding "the winding down of Mercer Capital and the . . . relationship between Mercer Capital and [Buckman]." (Buckman Aff. ¶ 21.) Each of these individuals works and resides close to the federal courthouse in Newark, New Jersey, and hence is easily able to testify there (id.), but lies beyond the subpoena power of this Court. See Fed. R. Civ. P. 45(c).

Plaintiffs retort that they "anticipate calling several individuals residing in Minnesota" to testify in this case (Mem. in Opp'n at 10), but their argument is unavailing. They first assert that they intend to call the personal representative of Demers's estate. (Id.) But they have explained neither the substance of the representative's proposed testimony nor its relevance to the claims asserted in this action. See Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc., 327 F. Supp. 2d 1032, 1046 (E.D. Mo. 2004) (party must "specify clearly the key witnesses to be called and indicate what their testimony will entail"). Indeed, the so-called "fraudulent" transfer of Mercer Capital's assets occurred

*after* Demers's death, and hence it is unclear what relevant information the personal representative would be able to provide.

Plaintiffs next assert that they intend to call an expert witness from Minnesota "regarding liability and damages [who] specializes in FINRA matters." (Mem. in Opp'n at 10.) But it has long been recognized that the convenience of expert witnesses is given little weight in the transfer analysis, as such individuals typically are well-compensated for their time and, accordingly, will travel to testify where needed. See, e.g., Williams v. Bowman, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001); Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628, 639-40 (S.D.N.Y. 1999); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 203 (D. Del. 1998). Notably, Plaintiffs have not yet even *identified* an expert and have offered no evidence suggesting that individual would be unwilling or unable to travel to New Jersey, or that it would be inconvenient to do so.

Lastly, Plaintiffs claim they intend to seek testimony from a representative of RBC Capital Markets, LLC ("RBC"), which they describe as a "clearing firm for both Mercer Capital and [Buckman]." (MacDonald Aff. ¶ 5.) Though not entirely clear, it appears that Demers opened accounts at RBC to process investments he (and Mercer Capital) directed with Plaintiffs' funds; RBC provided "centralized cashiering, bookkeeping, and execution functions." (Id. ¶ 6; Stolpe Aff. Ex. B.) Buckman later "accepted" control over these RBC accounts when Mercer Capital "withdrew its membership from FINRA." (Stolpe Aff. Ex. B.) An RBC representative, therefore, *might* be able to shed some light on the transfer of the accounts and, perhaps, the relationship between Mercer Capital and Buckman, if any.

Nevertheless, RBC's involvement does not aid Plaintiffs' cause here. Although RBC maintains an office in Minnesota, its main office is located in New York City, and Plaintiffs have not identified *which* RBC employee would be likely to have information relevant to this dispute. In other words, while that individual (or individuals) may well work in Minnesota, it is equally possible that relevant RBC witnesses work at the company's headquarters, a stone's throw from New Jersey. Without more information, therefore, RBC's connection to this case cannot change the witness-convenience calculus.[4]

Interests of justice. When analyzing this factor, courts consider (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine local law. See, e.g., Cosmetic Warriors Ltd. v. Abrahamson, 723 F. Supp. 2d 1102, 1107 (D. Minn. 2010) (Kyle, J.) (citations omitted). While certain of these items are irrelevant in the present case, on balance the pertinent considerations weigh in favor of transfer.

Most notable is the fourth consideration, the ability to enforce a judgment. Buckman has no offices in Minnesota and there is no suggestion it has assets here, and hence Plaintiffs appear unable to enforce a judgment against it in this state. Continued litigation in Minnesota, therefore, would result in the prospect of piecemeal litigation:

---

[4] Plaintiffs also argue that "many of the documents relating to the transfer of the customer accounts . . . are located with RBC in Minnesota" (Mem. in Opp'n at 12), but they offer no support for that proposition.

the instant lawsuit, followed by litigation to enforce any resultant judgment in New Jersey.[5]  In addition, given the strong preference for live testimony, see, e.g. Niver v. Travelers Indem. Co. of Ill., 430 F. Supp. 2d 852, 866 (N.D. Iowa 2006), litigating in Minnesota presents an obstacle to Buckman receiving a fair trial, as several key witnesses are not located within the subpoena power of this Court.  Litigating in New Jersey ameliorates each of these problems.

Plaintiffs respond that their decision to litigate here is entitled to "substantial deference."  (Mem. in Opp'n at 6.)  But while a plaintiff's choice of forum is "one factor to be considered," Ahlstrom v. Clarent Corp., Civ. No. 02-780, 2002 WL 31856386, at *3 n.9 (D. Minn. Dec. 19, 2002) (Kyle, J.), it garners less weight where, as here, the claims alleged in the action do not arise in the forum state, GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate & Fin. Servs., Inc., Civ. No. 02–1224, 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003) (Kyle, J.).  Plaintiffs have offered no cogent explanation why the (alleged) transfer of a New York-based company's assets to a New Jersey-based company has any connection to Minnesota.[6]

Plaintiffs also note that they assert claims under Minnesota law, and it is "preferable for local courts to determine issues of local law."  (Mem. in Opp'n at 12.)  But Plaintiffs' primary claim arises under the Minnesota *Uniform* Fraudulent Transfer Act, Minn. Stat. § 513.41 *et seq*., which, as its name suggests, is a law drafted for the

---

[5] For this same reason, considerations of judicial economy also favor transfer.

[6] Plaintiffs *do* note that Demers (a Minnesota resident) was a principal in Mercer Capital (Mem. in Opp'n at 12), but the alleged transfer of asserts from Mercer Capital to Buckman occurred *after* Demers's death.

purpose of uniform application by the states – including New Jersey, which has also enacted it. See N.J. Stat. § 25:2-20 *et seq.*[7] In any event, even if Minnesota law were to apply, federal district courts are "faced almost daily with the task of applying some state's law other than [their own], and [they are] capable of resolving . . . dispute[s] under" another state's law. Hughes v. Wal-Mart Stores, Inc., 250 F.3d 618, 620 (8th Cir. 2001). Accordingly, this consideration is entitled to little weight.

At bottom, the Court believes that the substantial nexus between Plaintiffs' claims and New Jersey, combined with Plaintiffs' inability to enforce a judgment on those claims without additional litigation in New Jersey, outweigh the deference accorded to Plaintiffs' choice of forum and any choice-of-law considerations. The interests-of-justice factor, therefore, also weighs in favor of transfer.

## CONCLUSION

To summarize: the convenience-of-parties factor is neutral, the convenience-of-witnesses factor heavily favors transfer, and the interests-of-justice factor favors transfer. On balance, therefore, the Court concludes that Buckman has satisfied its "heavy" burden of demonstrating transfer is warranted.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Buckman's Motion to Change Venue (Doc. No. 10) is **GRANTED**, and this case is **TRANSFERRED** to the United States District Court for the District of New

---

[7] The provision of the Uniform Fraudulent Transfer Act invoked by Plaintiffs has been enacted identically in Minnesota and New Jersey. Compare Minn. Stat. § 513.44(a) with N.J. Stat. § 25:2-25.

Jersey.  The Clerk of the Court is directed to take all steps necessary to effectuate this transfer in an expeditious fashion.

Date:  February 3, 2014                         s/Richard H. Kyle
                                                RICHARD H. KYLE
                                                United States District Judge