**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
MICHAEL A. KLATTE, *et al.*             :
                                        :
                    Plaintiffs,         :        Civil Action No. 14-0699 (FLW)(LHG)
                                        :
        v.                              :               **OPINION**
                                        :
BUCKMAN, BUCKMAN & REID,                :
INC.,                                   :
                                        :
                    Defendant.          :
_____:


**WOLFSON**, **United States District Judge**:


        Before the Court is the Motion of Michael A. Klatte, et al. ("Plaintiffs"), to stay, under

Section 3 of the Federal Arbitration Act (the "Act"), the proceedings now before the Court seeking

to enforce against Buckman, Buckman & Reid, Inc. ("Defendant"), two Financial Industry

Regulatory Authority ("FINRA") arbitration awards previously entered against Mercer Capital and

others under a theory of Defendant's successor liability for the fraudulent conduct of Mercer

Capital, Plaintiffs' former investment manager. Since filing their case, Plaintiffs have also brought

arbitration actions against Defendant before a FINRA panel and now move, under Section 4 of the

Act, for an order compelling Defendant to participate in those actions. In an Order dated June 13,

2014, this Court temporarily stayed the arbitration proceedings before FINRA, pending this

Court's decision on whether the Court or the arbitration panel should determine the substantive

arbitrability of the parties' dispute. For the reasons that follow, this Court finds that  i) Plaintiffs

have not waived their right to arbitrate the claims raised in their Complaint, ii) under the law of

the Eighth Circuit, the determination of substantive arbitrability under the rules of FINRA remains with the courts at least until it has been determined whether an arbitration agreement exists between the parties, and iii) the question of whether an agreement exists is a mixed inquiry of law and fact requiring additional submissions from the parties. Accordingly, Plaintiffs' Motion to stay these proceedings and to compel arbitration is DENIED as premature.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are investors who deposited millions of dollars of their savings in accounts with Mercer Capital that were managed by Leonard C. Demers. At the time Plaintiffs made their investments, Mercer Capital was a registered broker-dealer in the State of Minnesota and participant in the self-regulatory regime of FINRA. Over a number of years, Mr. Demers mismanaged Plaintiffs' accounts and converted large sums of his clients' money for his own purposes. On November 27, 2008, apparently overcome by guilt or fearing discovery, Mr. Demers committed suicide after waiting for the exclusion period of his multimillion-dollar life insurance policies to lapse. Mr. Demers' will directed that some of the proceeds of his life insurance policies be used to reimburse his former clients for the funds he had stolen. However, the policies were insufficient to fully reimburse all of the money he had taken, leaving some of his former clients, including Plaintiffs, with residual claims against Mr. Demers' estate. In an effort to collect the remainder of the money Mr. Demers had taken from them, Plaintiffs joined a probate action in Minnesota state court as creditors against the Demers estate.

At the same time that the distributions from Mr. Demers' life insurance policy were being made and Plaintiffs were making their claims in probate court, Plaintiffs also brought two separate

arbitration actions before a FINRA arbitration panel, first in April and then in May of 2009, bringing claims against both the estate of Demers and his former partnership, Mercer Capital. On December 1, 2010, the FINRA arbitration panel found Mercer Capital and several others[1] jointly and severally liable to certain Plaintiffs for $789,287. On February 11, 2011, the FINRA arbitration panel entered judgment in favor of certain Plaintiffs in the amount of $688,126 against the estate of Mr. Demers and $98,303 against Mercer Capital and others.[2] At an unspecified time shortly before, during, or after the arbitration proceedings, Mercer Capital ceased operations as an investment firm and brokerage and sold its remaining assets to Defendant. This sale included the transfer of the plurality of Mercer's client accounts to Defendant, including those of certain Plaintiffs, and resulted in three of Mercer's five surviving partners joining Defendant's firm. [Plaintiffs' Brief in Support, p. 4-6].[3] Plaintiffs allege that the "sale" and transfer of assets were fraudulent and were orchestrated by Mercer and Defendant to avoid having to satisfy the FINRA arbitration awards against Mercer. While the parties were arbitrating their claims against Mr. Demers' estate and Mercer Capital before FINRA, the probate of Mr. Demers' estate continued in Minnesota state court. On December 13, 2012, the probate action concluded and Plaintiffs received all potential claims against Mercer Capital belonging to the Demers estate as compensation for Plaintiffs' unsatisfied claims for reimbursement of stolen funds.

Plaintiffs initiated the underlying action in this case by Complaint in the State of Minnesota, County of Washington, District Court for the Tenth Judicial District on October 11,

---

[1] The Complaint does not allege who these "others" are, but the parties in briefing identify them as Mr. Ron Jason Ison and Mr. Anthony John Salino, two of the surviving partners of Mercer Capital.

[2] The Complaint does not allege who these "others" are, nor are they identified in briefing.

[3] As discussed, *infra*, all of the "facts" reproduced in this opinion are merely allegations raised by the parties in briefing. The vast majority are not even alleged in the Complaint.

2013, seeking to enforce against Defendant the arbitration awards previously secured before the FINRA arbitration panel against Mercer. Plaintiffs contend that Defendant operates as a mere continuation of Mercer Capital — that it is Mercer's successor in interest. Accordingly, Plaintiffs allege that, under Minnesota state law, the awards against Mercer are enforceable against Defendant. Specifically, in Count I of the Complaint, Plaintiffs allege that (i) Defendant, as the successor to Mercer, is liable to Plaintiffs for Mr. Demers' share of the proceeds of the allegedly fraudulent sale of all of Mercer's assets to Defendant and, alternatively, (ii) that the allegedly fraudulent transfer is void under Minnesota law, and that the assets of Mercer transferred to Defendant are available to satisfy the Plaitniffs' FINRA awards against Mercer. In Count II, Plaintiffs allege that Defendant is directly liable for the FINRA awards against Mercer under Minnesota law as Mercer's successor in interest. In Count III, Plaintiffs allege that Defendant, once again as Mercer's successor in interest, is liable for Mercer's breach of its agreement to abide by FINRA regulations in refusing to honor the FINRA arbitration awards.

On November 13, 2013, Defendant removed the underlying action in this case to the federal District Court for the District of Minnesota on the basis of the diversity of citizenship of the parties and an amount in controversy exceeding $75,000. Defendant then moved, on November 25, for a change of venue, based upon the convenience of the parties, pursuant to 28 U.S.C. § 1404(a). Defendant's motion was granted on February 3, 2014, and the underlying matter was transferred to this Court. Plaintiffs now move to stay this proceeding under Section 3 of the Arbitration Act, alleging (i) that their arbitration agreements with Mercer, governed by the rules of FINRA, are enforceable against Defendant as Mercer's successor in interest under Minnesota state law, and require the arbitration of all questions relevant to this dispute, including whether the dispute is arbitrable in the first instance; and, alternatively, (ii) that despite the absence of a written arbitration

agreement with Defendant, Defendant's mere membership in FINRA acts as an agreement with Plaintiffs as Defendant's customers and requires Defendant to arbitrate all questions relevant to this dispute, including whether the dispute is arbitrable in the first instance. Accordingly, Plaintiffs also ask this Court, under Section 4 of the Federal Arbitration Act, to compel the Defendant to submit to the arbitration of Plaintiffs' claims before a FINRA panel.

## III. JURISDICTION

In this case, Defendant invokes the jurisdiction of this Court under 28 U.S.C. § 1332(a). To establish diversity jurisdiction under § 1332(a), the amount in controversy must exceed $75,000 and there must be complete diversity of citizenship among the adverse parties. It is undisputed that the parties are diverse and that Plaintiffs allege the requisite amount in controversy.[4]

## IV. STANDARD OF REVIEW

The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"), directs federal courts to compel arbitration of claims "arising out of" a valid agreement to arbitrate. The FAA reflects "the national policy favoring arbitration agreements." 9 U.S.C. § 2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Thus a motion to compel arbitration "should not be denied unless it may

---

[4] Defendant notes in the Notice of Removal that the Complaint does not specify the citizenship of all of the Plaintiffs. Defendant subsequently conducted its own inquiry and now avers complete diversity of citizenship. The Complaint also only states the amount in controversy as in excess of $50,000, but the Court agrees with Defendant that the amounts stated in the individual counts greatly exceed this figure and pass the $75,000 threshold. Plaintiffs did not contest removal and do not now challenge the subject matter jurisdiction of this Court.

be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650 (1986); *AT & T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1749, 179 L.Ed.2d 742 (2011) ("[C]ourts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms."); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

The Federal Arbitration Act ("FAA") provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 2. Under the FAA, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Steelworkets v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960). "Where the contract contains an arbitration clause, there is a presumption of arbitrability." *McKinstry Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union No.* 16, 859 F.2d 1382, 1385 (9th Cir. 1988).

When examining the arbitrability of an issue, a court should "'independently review the agreement'" and "'exercise plenary review to determine whether the matter is arbitrable.' " *Int'l Union of Bricklayers & Allied Craftworkers, Local 5 v. Banta Tile & Marble Co., Inc.,* 344 Fed. Appx. 770, 772 (3d Cir. 2009) (quoting *McKinstry Co.,* 859 F.2d at 1385 (9th Cir. 1988) (citation omitted)). The Third Circuit has held that the FAA "provides that a court should not order arbitration unless it is satisfied that the making of the agreement for arbitration ... is not in issue."

6

*Par–Knit, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3d Cir. 1980). If the making of the arbitration agreement is at issue, the court shall proceed to resolve that issue. *Id.* The Third Circuit thus adheres to the general rule that courts are presumed to decide the "substantive arbitrability" of a dispute: whether an arbitration agreement exists and whether the claim is of the type which the parties have agreed to arbitrate. The Supreme Court however, has held that this presumption may be rebutted. "The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the "question of arbitrability," is "an issue for judicial determination *[u]nless the parties clearly and unmistakably provide otherwise.*" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649 (1986) (emphasis added); *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

The parties in this case dispute both whether there is in fact an arbitration agreement between them and, if so, whether Plaintiffs' claims are governed by the arbitration provision of the FINRA regulations to which Defendant, a FINRA member, has agreed to be bound; they dispute the "substantive arbitrability" of Plaintiffs' claims. Presumptively, therefore, this Court would resolve the question of the existence of an agreement and whether FINRA's rules compel Defendant to arbitrate Plaintiffs' claims. Before the Court can reach that question, however, it must address an antecedent issue raised in Plaintiffs' Motion. Plaintiffs contend that this dispute falls within the exception established by the Supreme Court in *AT&T Technologies*, specifically that FINRA Rule 12409[5] constitutes a clear and unmistakable manifestation of the intent of the parties

---

[5] FINRA Rule 12409 states: "The panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties." Rule 12409 is part of FINRA's "Customer Code" and applies to transactions between FINRA Members and members of the investing public. Plaintiffs also bring an action under FINRA's "Industry Code," exercising claims belonging to the Demers Estate which were awarded to Plaintiffs by the Minnesota Probate Court. For the purposes of this Opinion all discussion of Rule 12409 applies equally in the Customer Code and Industry Code context, because the Industry

to have the FINRA arbitration panel, not the court, decide the question of substantive arbitrability. Accordingly, before the Court can address whether the parties are bound to arbitrate, it must decide to whom the parties have allocated the authority to make such a decision.

## V. CHOICE OF LAW

Because this action was transferred to this Court from a district court in another circuit, an additional preliminary layer of analysis is required before the Court may reach the question of who determines arbitrability. The answer to that question may vary by circuit, so which circuit court's law applies is a critical inquiry. The Supreme Court case of *Van Dusen v. Barrack* established that when a civil action, brought before the court on the basis of its diversity jurisdiction, is transferred from one district court to another pursuant to § 1404(a) on motion of the defendant, the transferee forum must apply the law of the transferor forum. 376 U.S. 612, 639 (1964) ("[W]here the defendants seek transfer [under § 1404(a)], the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."). The *Van Dusen* Court summarized its holding as the principle that "[a] change of venue under § 1404(a) generally should be with respect to state law, but a change of courtrooms." *Id*. At 639. *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 170-71 (3d Cir. 2011). In other words, while the courtroom in which the parties litigate may change, the state law to which they are subject should not. The circuit courts of appeals are divided on whether the holding of *Van Dusen* extends to questions of federal law. *See* discussion in *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037 (9th Cir. 2012); *Compare In*

---

Code contains an identical provision, Rule 13413. "The panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties."

*re Ford Motor Co.*, 591 F.3d 406 (5th Cir. 2009) (where federal "law is 'geographically non-uniform, a transferee court should use the rule of the transferor forum in order to implement the central conclusion of *Van Dusen v. Barrack*, 376 U.S. 612 (1964), and *Ferens v. John Deere Co.*, 494 U.S. 516 (1990): that a transfer ... accomplishes 'but a change of courtrooms.'"") (quoting *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1127 (7th Cir. 1993)) *with Desiano v. Warner-Lambert & Co.*, 467 F.3d 85 (2d Cir. 2006) ("We have previously held that a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit. . . . [F]ederal courts comprise a single system applying a single body of law, and no litigant has a right to have the interpretation of one federal court rather than that of another determine his case. . . .") (quoting *Menowitz v. Brown*, 991, F.2d 36, 40 (2d Cir. 1993)).

In this case, however, the split between the circuits is not implicated, because the parties agree that *Van Dusen* should govern and that the law of the transferor forum, Minnesota, should be applied by this Court.[6] The parties appear to dispute 1) whether it is the law of the transferor federal circuit or the law of the transferor state supreme court, which properly applies to their dispute and 2) what the law of the transferor federal circuit holds. Close examination of the first of the parties' points of contention, however, reveals that their disagreement presents a false conflict. Plaintiffs contend that, under *Van Dusen*, the state law of Minnesota should govern the dispute. However, they further assert that the Supreme Court of Minnesota has not yet decided to whom the determination of the substantive arbitrability of a dispute is entrusted, and argue that, in the absence of its own rule, the Minnesota Supreme Court would follow the lead of the Eighth

---

[6] As discussed above, this case originated in the state courts of Minnesota. From there it was removed to the federal district court for the district of Minnesota. Finally, pursuant to a § 1404(a) transfer for the convenience of the parties, it was transferred to this Court.

Circuit.[7] [Plaintiffs' Choice of Law Brief, p. 6]. Defendant contends that the law of the federal district court for the district of Minnesota should apply — in other words, the law of the Eighth Circuit. [Defendant's Choice of Law Brief, p. 4]. While the parties agree that Eighth Circuit precedents govern, they disagree about what those precedents state. Accordingly the only actual point of disagreement between the parties is not one of choice of law, but rather one of the substance of Eighth Circuit law.

## VI. WAIVER

As still another threshold matter, Defendant argues that the question of who should decide the substantive arbitrability of Plaintiffs' claims is moot because Plaintiffs have waived any right to request arbitration by bringing the present action in the courts of law. Plaintiffs, in response, contend that the Supreme Court's decision in *Howsam v. Dean Witter Reyonlds, Inc.*, 537, U.S. 79 (2002), commits the question of waiver to the arbitration panel, and, accordingly, Defendant's defense to arbitrability is not properly before this Court. In *Howsam*, the Supreme Court decided that the presumption in favor of courts determining "question[s] of arbitrability" [is] *not* applicable in other kinds of general circumstance[s] where parties would likely expect that an arbitrator would decide the gateway matter. Instead, the Court held that "'procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively *not* for the judge, but for an arbitrator, to decide. 537, U.S. at 84. The Court continued, "[s]o, too, the presumption is that the arbitrator should decide "allegation[s] of *waiver*, delay, or a like defense to arbitrability." *Id.* at

---

[7] Neither Plaintiffs nor Defendants address the choice of law issue in the waiver context, but based upon the general precedents cited in their briefs, it appears that both agree that Eighth Circuit law governs that question as well.

84-85 (2002) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)) (emphasis added).

Although not identified by either of the parties, the Eighth Circuit appears, in at least one case, to have adopted Plaintiffs' broad reading of *Howsam*. The defendant in *Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.* contended that the plaintiff had waived its right to arbitrate by pursuing "litigation in the Oklahoma courts" concerning two of the contracts it sought to bring before the arbitration panel. 328 F.3d 462, 466 (8th Cir. 2003). The district court below had resolved the waiver question itself and an appeal was taken, arguing that the decision whether waiver occurred through participation in litigation was reserved to the arbitration panel. The Eighth Circuit agreed, overturning the district court and holding that:

> the United States Supreme Court has recently reiterated that "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" *Howsam,* 537 U.S. at 123 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)). Therefore, once the panel is reconstituted with the arbitrator appointed by district court, the issue of waiver may be presented for the panel's consideration.

*Transamerica*, 328 F.3d at 466. In its supplemental briefing, Defendant, without observing *Transamerica*, seeks to distinguish *Howsam* by relying upon the reasoning of a pre-*Howsam* Eighth Circuit case, *N & D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722 (8th Cir. 1976) ("'[W]aiver' can mean that the party proceeding under s 3 is . . . in default in proceeding with such arbitration, and so under the terms of the Arbitration Act is not entitled to a stay. This is a question for determination by the courts. A default occurs when a party actively participates in a lawsuit or takes other action inconsistent with the right to arbitration.") (internal citations omitted), and a Minnesota district court case, *Webster Grading, Inc. v. Granite Re, Inc.*, 879 F. Supp. 2d 1013 (D. Minn. 2012) (finding *Howsam* inapplicable where defendant argued that plaintiff, over the course of months, waived its right to arbitrate by initiating litigation in the district court, conducting

discovery, and responding to counterclaims, instead of demanding arbitration of the same claims before defendant had incurred litigation expenses). While this Court may find that these cases are better reasoned than *Transamerica*, the uncertainty as to whether *N & D Fashions* remains good law in the Eighth Circuit post-*Howsam* and the failure of *Webster Grading* to distinguish or even consider *Transamerica*, a controlling precedent for the Minnesota District Court, makes it difficult for the Court to follow their holdings to the exclusion of *Transamerica*. This Court accordingly looks elsewhere for guidance.

The Third Circuit has undertaken a thorough review of *Transamerica*, greatly limiting the decision to its particular facts. First, the Third Circuit observed that from the facts enunciated by the Eighth Circuit in *Transamerica*, it was impossible to determine whether the alleged waiver was based on the conduct of the defendant in litigating in the Oklahoma courts, as stated once in the opinion, or based upon the conduct of the defendant in participating in past arbitrations, as stated on three occasions in the opinion. The Third Circuit concluded that "[t]o the extent that *Transamerica* may be understood as a case involving waiver by prior arbitration conduct, rather than by prior litigation conduct, the case is plainly distinguishable" from cases where litigation conduct before the district court then considering the waiver argument is at issue. *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 220 (3d Cir. 2007). The Third Circuit continued that, even if the Eighth Circuit's decision were premised upon the defendant's past litigation conduct, the result reached could "be explained by the rather unique procedural circumstances of that case." *Id.* at 220. In *Transamerica* the parties had been engaged in arbitration proceedings for many months until they were interrupted by the death of one of the arbitrators. The question of waiver, based purely upon the litigation conduct of defendants in prior court cases (or perhaps conduct in prior arbitration actions), was raised in a new district court action which had been brought only for the

purpose of naming a new arbitrator to the panel to replace the deceased arbitrator. Accordingly, the Eighth Circuit was forced to choose between allowing the Court, which was not acquainted with any of the details of the parties' dispute, having been introduced to the case only recently for the appointment of a new arbitrator, to retain determination of waiver, or sending the question back to the arbitration panel, which was intimately familiar with the dispute after having presided over it for many months. *Id.* at 220. In these circumstances, consideration of judicial economy, more than controlling precedent, weighed in favor of the Eighth Circuit returning the question of waiver to the experienced panel rather than the court, which had limited experience with the case. *Ehleiter*, 482 F.3d at 217-18. This Court finds the Third Circuit's reading of *Transamerica* persuasive, particularly because *Transamerica* does not appear to have been subsequently cited in the courts of the Eighth Circuit for the proposition that *Howsam* committed all questions of waiver to the arbitration panel. Having distinguished *Transamerica*, this Court also agrees with the Third Circuit's reading of *Howsam*. "[W]e conclude the Supreme Court did not intend its pronouncements in *Howsam* . . . to upset the 'traditional rule' that courts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court." *Id.* at 217.

Having determined that neither *Howsam* nor *Transamerica* commits the determination of waiver to the arbitration panel in all cases, this Court finds that the traditional presumption in favor of court determination of waiver by litigation conduct, as embodied in the Eighth Circuit by the decision in *N & D Fashions*, applies in this case. Accordingly, I will consider Defendant's argument that Plaintiffs have waived their right to arbitrate their claims against Defendant by "substantially invoking the litigation machinery" in their cases before the Minnesota State Court and the federal district courts. In utilizing the language, in briefing, of "litigation machinery,"

Defendant is invoking part, but not all, of the Eighth Circuit's test for waiver. The governing law of the Eighth Circuit provides that:

> The party seeking arbitration may be found to have waived his right to it . . . if he (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.
> A party acts inconsistently with its right if it [s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right by failing to request a stay and fully adjudicating its rights.
> The actions must result in prejudice to the other party for waiver to have occurred. *Stifel, Nicolaus & Co. v. Freeman,* 924 F.2d 157, 158–59 (8th Cir. 1991) (holding there was no prejudice and therefore no waiver, even though the moving party acted inconsistently by initiating the suit). Prejudice results when, *inter alia,* parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts.

*Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003) (internal citations and quotations omitted). It is clear that Plaintiffs always knew of their right to arbitration. Similarly, although they have not "fully adjudicated" their rights before the courts of law, in bringing this action in court instead of before an arbitration panel, Plaintiffs have acted inconsistently with their right to arbitrate. The point that is missing from Defendant's arguments, however, and the point which this Court now finds dispositive, is prejudice.

Reviewing the *Kelly* considerations, the Court finds that Plaintiffs have not unduly delayed in requesting their stay and Defendant has not been prejudiced by Plaintiffs' litigation conduct. This matter was removed by Defendant to the Minnesota District Court on November 13, 2013. On November 20, Defendant Answered the Complaint. Just five days later, and less than two weeks after the removal of the case to federal court, Defendant moved for a change of venue under § 1404(a) to this Court. Plaintiffs opposed the change of venue motion, but the Docket reflects no other motion practice or discovery on their part. Defendant won its motion on February 3, 2014, and this case was transferred to this Court effective February 4. Defendant's local counsel entered his appearance three weeks later on February 26, 2014, followed shortly by Plaintiffs' local

counsel's appearance on March 6, 2014. Two days later, on March 8, Plaintiffs' primary, out-of-district counsel moved for admission *pro hac vice*. Those motions were granted on March 26, 2014. Just two days after having been admitted, Plaintiffs' counsel filed the present motion to compel arbitration and stay the proceedings. Accordingly, while it is true that Plaintiffs acted "inconsistently" with the right to arbitration by bringing this action originally in Minnesota State Court, nonetheless, since removal to federal court they have not engaged in substantial discovery, have engaged in motion practice only to oppose the venue transfer and to file the present motion to compel arbitration, and have not litigated any of the substantial issues concerning the enforcement of their arbitration awards on the merits. At the stage of the litigation at which Plaintiffs filed their Motion to compel arbitration, just over five months after removal, before which time the parties were chiefly concerned with disputing the venue transfer and having counsel admitted to the District of New Jersey, this Court cannot find that the granting of Plaintiffs' request would require substantial duplication of efforts by the parties. In short, Defendant has not been prejudiced by Plaintiffs' delay in filing this motion to compel arbitration. Hence, under the law of the Eighth Circuit, this Court finds that Plaintiffs have not waived their right to request arbitration of their claims.


VII. SUBSTANTIVE ARBITRABILITY


Having determined that Plaintiffs have not waived the right to request arbitration of their claims and, accordingly, that the question of the claims' substantive arbitrability is not moot, this Court must, nevertheless, still decide the issue of who has the authority to determine the

substantive arbitrability[8] of Plaintiffs' claims — this Court or the FINRA arbitration panel. The Supreme Court has made the general rule governing the allocation of authority between courts and arbitration panels clear; the question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the "*question of [substantive] arbitrability,*" is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649 (1986) (emphasis added); *First Options,* 514 U.S. at 944.[9] As discussed above, Plaintiffs present two theories under which Defendant is bound to arbitrate this dispute: 1) First, Plaintiffs have written arbitration agreements with Mercer that Plaintiffs claim bind Defendant as Mercer's successor in interest under Minnesota state law, and 2) Second, Defendant's mere membership in FINRA is alleged to constitute an arbitration agreement with Plaintiffs, who are alleged to be customers of Defendant. Under either theory, the Plaintiffs do not contest that a court would normally decide whether an arbitration agreement binds the parties, or, in the case of the second theory, whether there is in fact an arbitration agreement. Instead, under both theories, Plaintiffs rely on the exception provided in *AT&T Technologies*; they assert that a provision of the FINRA rules, Rule 12409, acts as a manifestation of the "clear and unmistakable" intent of the parties to have the arbitration panel, not the courts, determine arbitrability, and that, in the case of the first theory, this FINRA provision is explicitly adopted in Plaintiffs' arbitration agreement with Mercer which they seek to enforce against Defendant and in

---

[8] The Court addresses only the issue of "substantive arbitrability," because the parties do not dispute any questions of procedural arbitrability, such as the failure of a condition precedent to a dispute being submitted to arbitration. Even if the parties were to dispute such questions, however, the Court would not consider them, as the Supreme Court has made clear that questions of procedural arbitrability are reserved to the arbitration panel. *Howsam*, 537 U.S. 79, 84 (2002).

[9] The Supreme Court further explained that there are two subdivisions to the question of substantive arbitrability, both reserved to the Courts; first, "whether the parties are bound by a given arbitration clause," and second,  "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy"  *Howsam*, 537 U.S. 79, 84 (2002).

the second theory, this FINRA provision is incorporated into the constructive agreement implied by Defendant's membership in FINRA and Plaintiffs' status as Defendant's customers. As indicated, *supra*, Rule 12409 states that "[t]he panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties." Plaintiffs argue that Rule 12409 gives exclusive power to the arbitration panel to interpret Rule 12200, the rule of the FINRA Code enunciating the circumstances in which a dispute is arbitrable. Specifically, Rule 12200 states:

> Parties must arbitrate a dispute under the Code if:
> • Arbitration under the Code is either:
>       (1) Required by a written agreement, or
>       (2) Requested by the customer;
> • The dispute is between a customer and a member or associated person of a member; and
> • The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

Plaintiffs argue that the power to interpret this provision implies the power to determine questions of substantive arbitrability, including whether there is an agreement.

The circuit courts of appeals are divided as to whether FINRA Rule 12409 qualifies as a "clear and unmistakable" manifestation of intent as required by *AT&T Technologies*. *Compare Cogswell v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 78 F.3d 474 (10th Cir. 1996) *with FSC Securities Corp. v. Freel*, 14 F.3d 1310 (8th Cir. 1994). As discussed, *supra*, however, the parties agree that the law of the Eighth Circuit controls this question. Yet, the parties disagree as to what the law states. Plaintiffs contend that the Eighth Circuit's decision in *Freel* interprets FINRA Rule 12409 to commit all questions of substantive arbitrability, normally reserved to the courts, instead to the arbitration panel. 14 F.3d at 1312-313 ("[W]e hold that the parties' adoption of this provision *is* a 'clear and unmistakable' expression of their intent to leave the question of arbitrability to the arbitrators. In no uncertain terms, [the precursor to Rule 12409] commits interpretation of all

17

provisions of the [precursor to the FINRA Rules] to the arbitrators. Reading the . . . Code — effectively an agreement between the parties — as a whole, we see no reason not to apply [the precursor to Rule 12409] to the arbitrators' decision regarding the application of [a substantive limitation on arbitrability]."). This Court agrees with Plaintiff that *Freel* can be read to commit the question of arbitrability to the arbitration panel, but also observes that *Freel* does not apply in all circumstances.

The limitation of the holding in *Freel* is best exemplified by two recent decisions from the Eighth Circuit. In *Fallo v. High-Tech Institute*, 559 F.3d 874 (8th Cir. 2009), the circuit court reaffirmed that *Freel* is still good law in the circuit but clarified its holding. "This court held that *the parties' incorporation of the NASD Code* [the predecessor to FINRA] included an adoption of Section 35 [the predecessor to Rule 12409] and was a 'clear and unmistakable' expression of the parties' intent to leave the question of arbitrability to the arbitrators." *Fallo*, 559 F.3d at 878 (quoting *Freel* at 1312-13) (emphasis added). In short, the *Fallo* court explained that only by explicitly incorporating the FINRA Code into their *written agreement* did the parties agree to send the issue of arbitrability to the arbitration panel. *Ibid.* In this case, only Plaintiffs' first theory, that Defendant is bound to agreements signed by Plaintiffs and Mercer, involves a written agreement. Thus, if the state law question of successor in interest were resolved in Plaintiffs' favor, *Freel* may apply to send any questions of substantive arbitrability to the arbitrator, after the Court's initial determination that an agreement exists.

Plaintiffs' second theory, that Defendant's membership in FINRA operates as an agreement with Plaintiffs, does not involve a written instrument. The other recent opinion from the Eighth Circuit suggests that, in this circumstance, *Freel* does not apply and the determination of arbitrability remains with the courts. The district court in *Berthel Fisher & Co. Financial*

*Services, Inc. v. Larmon*, No. 11-CV-889 ADM/JSM, 2011 WL 3294682, at *3 (D. Minn. Aug. 1, 2011) *aff'd*, 695 F.3d 749 (8th Cir. 2012), observed that there was no written agreement between the defendant and certain plaintiffs. The defendant there, however, was a signatory of the FINRA Code of Arbitration Procedure for Customer Disputes, as is Defendant in this case.  In the absence of a written agreement, the district court found no "'clear and unmistakable intent' to submit the question of arbitrability to the arbitration panel' and proceeded to interpret the FINRA rules and to decide the question of substantive arbitrability based upon those rules. *Id.* At *3-*4. The Eighth Circuit affirmed, confirming the court's authority to "determine . . . whether there is a valid arbitration agreement and whether the dispute falls within the terms of that agreement." *Berthel Fisher & Co. Financial Services, Inc. v. Larmon*, 695 F.3d 749, 752 (8th Cir. 2012).[10]

Accordingly, to determine the application of *Freel* and resolve this case, this Court is called upon to answer at least part of the question of substantive arbitrability, namely under Plaintiffs' first theory, whether Defendant is Mercer's successor in interest and, therefore, whether there is an arbitration agreement between the parties; and, under Plaintiffs' second theory, whether Plaintiff is a customer of Defendant.[11] To address Plaintiff's first theory would require inquiry into facts which are not now before the Court. There are no verified exhibits or sworn declarations of counsel concerning the exact relationship between Plaintiffs and Mercer, the nature of the

---

[10] Other Courts have also held that, absent a more explicit statement in the agreement itself, Rule 12409 is insufficient evidence of intent to arbitrate arbitrability. *See, e.g.*, *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 (2d Cir. 2001) ("Whether one party's membership in [FINRA], in the absence of a separate agreement between the parties, can constitute a clear and unmistakable intent to submit the arbitrability of their disputes to the arbitrators remained open until now. Today we hold that it cannot.").

[11] If Plaintiffs persist in their contention, under FINRA's Industry Code, that they also have a separate claim against Defendant based upon the claims of the estate of Demers to the proceeds of the allegedly fraudulent sale of assets, the Court would similarly be called upon to determine whether the Estate of Demers is a FINRA "member" for the purposes of the Code.

allegedly fraudulent transfer of assets and personnel from Mercer to Defendant, the decisions in the prior FINRA arbitration proceedings, the chronological relationship of the discovery of Demers' fraud, Mercer's asset sale to Defendant, and the handing down of the arbitration awards, nor any of the other myriad circumstances which the Court would be called upon to review in order to answer the question of successorship under state law. *See New Horizon Enterprises, Inc. v. Contemporary Closet Design, Inc.*, 570 N.W.2d 12, 16 (Minn. Ct. App. 1997) (Court's determination of whether transfer of assets on the eve of arbitration judgment was fraudulent required finding of fact); *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn. 1989) ("Minnesota follows the traditional approach to corporate successor liability. . . set[ting] forth four circumstances under which successor corporations may be held liable for actions of a transferor corporation: [W]here one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts") (standard of review for successor liability in summary judgment); *T.H.S. Northstar Associates v. W.R. Grace & Co.-Conn.*, 840 F. Supp. 676, 678 (D. Minn. 1993) (*"Although Minnesota has not expressly adopted the de facto merger doctrine, the second exception necessarily incorporates that doctrine for the purpose of finding successor liability. Courts applying this exception as a basis of successor liability recognize four elements of a de facto merger: (1) continuity of management, personnel, assets and operations; (2) continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock; (3) that the seller ceases operations, liquidates, and dissolves

as soon as legally and practically possible; and (4) that the purchasing entity assumes the obligations of the seller necessary for uninterrupted continuation of business operations.").

Addressing Plaintiffs' second theory would also require factual inquiry by this Court, albeit into a narrower set of issues. As a threshold matter, under the law of the Eighth Circuit "The FINRA Code . . . constitutes an agreement to arbitrate disputes between [a FINRA member] and its customers." *Berthel Fisher & Co. Financial Services, Inc. v. Larmon*, 695 F.3d 749 (8th Cir. 2012). Accordingly, Defendant, as a FINRA member, can be compelled to arbitrate disputes with its customers in the absence of an express agreement to do so. *Ibid*. FINRA Rule 12200 provides in relevant part that parties must arbitrate a dispute under the FINRA Code if (i) requested by the customer, (ii) "the dispute is between a customer and a member or associated person of a member," and (iii) "the dispute arises in connection with the business activities of the member or the associated person." Defendant challenges prongs (i) and (ii) on the grounds that Plaintiffs are not customers of Defendant and prong (iii) on the ground that the dispute over the enforcement of arbitration awards against Mercer which Plaintiffs attempt to enforce against Defendant does not arise "in connection with Defendant's business activities." In considering Defendant's challenge to Plaintiffs' status as Defendant's customers, under the law of the Eighth Circuit, for a FINRA member defendant to be compelled to arbitrate a dispute with a customer the dispute must (i) arise from the "provision of investment or brokerage related services" and (ii) those services must have been provided by Defendant to the customer plaintiff "either directly or through its associated persons." *Ibid.* Together these elements constitute a "brokerage or investment relationship between the parties." *Ibid.* The Court has been provided in briefing with unsworn assertions concerning the relationship between Defendant and Plaintiffs. Defendant asserts that it has no relationship of any kind with certain of the Plaintiffs. It also asserts that it does hold the accounts of several of the

Plaintiffs, but that it has provided no investment or brokerage related services to those Plaintiffs in its time holding those accounts. These are factual allegations which require support to be credited by the Court. Considering Defendant's challenge that Plaintiffs' allegations of Defendant's participation in an allegedly fraudulent sale of assets by Mercer do not arise "in connection with Defendant's business activities," it appears that this is a mixed question of law and fact. First the Court would have to determine the legal meaning of "business activities" under the FINRA Code. Next the Court would have to engage in the same consideration as above, concerning what the factual nature of Defendant's business activities with Mercer was.

These questions have not been adequately briefed. Defendant has devoted the overwhelming majority of its briefing to issues of waiver. As discussed, *supra*, this Court has found no waiver under the law of the Eighth Circuit of the right to arbitrate Plaintiffs' claims in this case. Plaintiffs have similarly focused the majority of their briefing on the single contention that *Freel* controls absolutely and commits all questions of substantive arbitrability to the FINRA arbitration panel. This Court now finds explicitly what it has already observed above; it is clear that *Freel* commits *some* questions of substantive arbitrability to FINRA arbitration panels in *some* circumstances, but that it does not do so in *all* circumstances. For example, one of Plaintiffs' theories of liability in this case relies on a constructive arbitration agreement implied by Defendant's membership in FINRA. This theory depends upon Plaintiffs' status as Defendant's "customers," a term of art of debatable meaning under the FINRA rules. The Eighth Circuit has very recently adjudicated claims under this exact theory, including itself interpreting the FINRA Code to determine whether the plaintiff was a customer of the defendant, and, therefore, whether an arbitration agreement could be implied from the defendant's membership in FINRA. *See Berthel Fisher & Co. Financial Services, Inc. v. Larmon*, 695 F.3d 749, 752 (8th Cir. 2012).

Accordingly, the question of who determines arbitrability under the law of the Eighth Circuit is still dependent upon a preliminary determination by the Court of the existence of an arbitration agreement. Such a determination requires a factual inquiry, which the Court cannot conduct on the record now before it. Plaintiffs' Motion to compel arbitration is DENIED until the factual record can be appropriately supplemented.

## VIII. AUTHORITY TO STAY OR COMPEL ARBITRATION

This Court's decision has been somewhat complicated by the procedural posture of this case. The arguments raised in briefing by Defendant suggest not only that arbitration should not be compelled, but rather, that an ongoing arbitration already initiated by Plaintiffs should be enjoined. While the Federal Arbitration Act grants courts the authority to compel arbitration in Section 4, it is silent on the authority of courts to stay or enjoin ongoing arbitration proceedings concerning the same subject matter as a case before the court. Courts may, however, derive the authority to stay or enjoin ongoing arbitration proceedings from state law. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 476-77 (1989) (the FAA does not preempt state statues authorizing courts to stay arbitration proceedings). Minnesota state law provides this Court with such authority. *Milwaukee Mut. Ins. Co. v. Currier*, 310 Minn. 81, 84, 245 N.W.2d 248, 250 (1976):

> The trial court's authority to stay arbitration proceedings is found in Minn. St. 572.09(b): "On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration."

Accordingly, it appears that Defendant's opposition to Plaintiffs' Motion would have been properly raised as a cross-motion to stay the arbitration proceedings, but that this Court nevertheless has authority to enjoin the arbitration panel pending the resolution of Defendant's challenges to arbitrability.

The Eighth Circuit Court of Appeals has established the standard for considering preliminary injunctions. *See Dataphase Sys. Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113–14 (8th Cir. 1981) (*en banc*). Applying the law of the Eighth Circuit, which the parties agree governs this case, this Court must consider: (1) the threat of irreparable harm to the moving party if an injunction is not granted, (2) the harm suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted, (3) the public interest, and (4) the probability that the moving party will succeed on the merits. *Id.* "The very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability [of success on the merits] test." *Id.* at 113. The movant carries the burden of establishing that a preliminary injunction is appropriate. *Lankford v. Sherman,* 451 F.3d 496, 503 (8th Cir. 2006). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh toward granting the injunction." *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 503 (8th Cir. 1987) (citation omitted).

A. Irreparable Harm

A party suffers irreparable harm when it is required to arbitrate a dispute that it did not agree to arbitrate. *Berthel Fisher & Co. Fin. Servs., Inc. v. Larmon*, CIV. 11-889 ADM/JSM, 2011 WL 3294682 (D. Minn. Aug. 1, 2011) *aff'd*, 695 F.3d 749 (8th Cir. 2012) (citing *McLaughlin*

*Gormley King Co. v. Terminix Int'l Co.,* 105 F.3d 1192, 1194 (8th Cir. 1997)); *O.N. Equity Sales Co. v. Prins,* 519 F. Supp. 2d 1006, 1013 (D. Minn. 2007) (same). Accordingly, allowing the arbitration action brought by Plaintiffs against Defendant, which is now pending before a FINRA arbitration panel, to proceed while this Court considers whether an arbitration agreement exists risks causing irreparable harm to Defendant by forcing it to arbitrate claims the Court might later find not to be the subject of an arbitration agreement. This factor weighs strongly in favor of granting a temporary injunction.

B. Balance of Harms

In order to obtain a preliminary injunction, the moving party must show that "the harm to the [moving party] in the absence of a preliminary injunction outweighs the potential harm that granting a preliminary injunction may cause the [non-moving party]." *ASICS Corp. v. Target Corp.,* 282 F. Supp. 2d 1020, 1031 (D. Minn. 2003). Plaintiffs are, by and large, Minnesota residents. They brought this case before the courts of law in Minnesota. After its removal to federal court, they had the opportunity to oppose Defendant's request to transfer the case from Minnesota to this District, but were unsuccessful. Plaintiffs admit in briefing that their bringing of a separate arbitration action in parallel to this proceeding was in part motivated by their desire not to litigate claims in this forum. [Plaintiffs' Brief in Support, p. 1 ("Plaintiffs, not wanting to litigate in this Court, recently started an arbitration against Buckman before FINRA.")]. The primary harm to Plaintiffs from granting a temporary injunction of the parallel arbitration proceedings is, therefore, by Plaintiffs' own estimation, the harm of being forced to contest the question of arbitrability in a distant forum. Plaintiffs also argue by implication that to enjoin the arbitration proceeding would

25

deprive them of their rights under their arbitration agreements, but this Court has already decided that it has yet to be established whether there are any such agreements under which Plaintiffs might have rights. Accordingly, the Court finds that the risk of harm to Plaintiffs — being forced to litigate in this Court the narrow question of whether arbitration agreements exist which bind Defendant — is outweighed by the risk of harm to the Defendant by allowing the arbitration proceeding to continue — depriving Defendant of access to courts and forcing it to submit to arbitration where no agreement required it to do so. This factor too weighs strongly in favor of granting a temporary injunction.

C. Public Interest

Congress has expressed a "clear intent, in the [Federal] Arbitration Act, to move the parties in an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22 (1983); *see also Fleet Boston,* 264 F.3d at 773 ("[W]here the parties have agreed to arbitrate, there is a strong federal policy in favor of arbitration."). Here, because the Court has concluded that it has the authority to decide whether there is an arbitration agreement, and is as yet unable to make that decision due to the factual inadequacy of the record, public policy concerns neither weigh in favor of nor against granting the injunction. This Court has acted and will continue to act expeditiously to determine whether the parties' dispute is arbitrable, and, if it concludes that enforceable arbitration agreements do bind the parties, it will move to enforce the Federal Arbitration Act with all haste. For now, however, diligence in the application of the Act requires a temporary stay of the arbitration action, which will either be made permanent or lifted after the Court's decision.

D. Likelihood of Success on the Merits

Likelihood of success on the merits requires that the movant find support for its position in governing law. *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1473–74 (8th Cir. 1994). The parties have not yet properly briefed the merits of the Plaintiffs' two theories of successor liability — under Minnesota state law and by virtue of Defendant's FINRA membership. Still, in Defendant's briefing, and more importantly, from the Court's own inquiry into the legal issues implicated, it appears that Defendant has at least some likelihood of success on the merits on at least one of the two theories. *See Berthel Fisher & Co. Financial Services, Inc. v. Larmon*, 695 F.3d 749, 752 (8th Cir. 2012) (defining "customer" under the FINRA code in such a way as to potentially disqualify certain or all of Plaintiffs, depending on the factual circumstances which have yet to be established by evidence). This factor has yet to be established, but certainly does not weigh against the granting of a temporary injunction.

Having weighed all of the *Dataphase Sys.* factors, this Court concludes that temporarily enjoining the arbitration proceeding now pending before a FINRA panel, which concerns the same claims raised by Plaintiffs in this case, is appropriate while the parties supplement the factual record to enable the Court to make the threshold determination of whether there is an agreement between the parties to arbitrate the disputed claims.

CONCLUSION

For the foregoing reasons, this Court finds that i) Plaintiffs have not waived the arbitration of the claims raised in their Complaint, ii) under the law of the Eighth Circuit, the determination of substantive arbitrability under the rules of the Financial Industry Regulatory Authority ("FINRA") remains with the courts at least until it has been determined whether an arbitration agreement exists between the parties, iii) the question of substantive arbitrability — whether an agreement exists — is a mixed inquiry of law and fact requiring additional submissions from the parties. Accordingly, Plaintiffs' Motion to stay these proceedings and compel arbitration is DENIED as premature. The parties are directed to brief the issues of 1) whether Defendant is Mercer's successor in interest under Minnesota state law and 2) whether any Plaintiffs are "customers" of Defendant within the meaning of the FINRA Rules, including the submission of declarations or other evidence necessary to resolve these issues. [12] The temporary stay of the FINRA arbitration proceedings imposed by this Court's June 13, 2014 Order is extended until the issuance of the Court's opinion on Plaintiffs' renewed Motion to compel arbitration and any cross-motion of Defendant to stay or enjoin the arbitration proceeding.

Order to follow.

Dated:      7/8/2014                                    /s/ Freda L. Wolfson
                                                   The Honorable Freda L. Wolfson
                                                   United States District Judge

---

[12] And, potentially, whether the Estate of Mr. Demers is a FINRA "member."