***NOT FOR PUBLICATION***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
: Civil Action No. 14-0699 (FLW)(LHG)
MICHAEL A. KLATTE, KLATTE GOLF :
LIMITED PARTNERSHIP, MICHAEL :
KLATTE AS BENEFICIARY OF THE : **OPINION**
MICHAEL A. KLATTE CHARITABLE :
REMAINDER UNITRUST, MICHAEL :
A. KLATTE CHARITABLE REMAINDER :
UNITRUST, MICHAEL A KLATTE AS :
TRUSTEE AND MAKER OF THE :
MICHAEL A. KLATTE :
CHARITABLE REMAINDER :
UNITRUST, KLATTE GOLF :
MANAGEMENT, INC., DUANE STOLPE :
AND SHEILA STOLPE, DUANE AND :
SHEILA STOLPE AS BENEFICIARIES :
OF THE STOLPE CHARITABLE :
REMAINDER UNITRUST, DUANE :
STOLPE IRA, STOLPE FAMILY :
LIMITED PARTNERSHIP, STOLPE :
MANAGEMENT, INC. AND STOLPE :
CHARITABLE REMAINDER :
UNITRUST, COLLECTIVELY, :
THEMSELVES AND AS ASSIGNEES :
FOR THE ESTATE OF LEONARD C. :
DEMERS, :
:
                        Plaintiffs, :
:
    v. :
:
BUCKMAN, BUCKMAN & REID, INC., :
:
                        Defendant. :
_____:

**WOLFSON, United States District Judge**:

This matter comes before the Court on a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, filed by Defendant Buckman, Buckman & Reid, Inc. ("BBR" or

1

"Defendant"), and on a cross-motion for partial summary judgment filed by Plaintiffs,[1] seeking judgment on the issue of liability.  This matter concerns the allegedly fraudulent transfer of customer accounts from Plaintiffs' former investment firm to BBR, as well as BBR's liability for arbitration awards entered against Plaintiffs' former investment firm.  For the following reasons, Defendant's motion for summary judgment is DENIED, and Plaintiff's cross-motion for partial summary judgment is DENIED.

## I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court incorporates by reference the factual background and procedural history set forth in its previous opinion, which was issued on July 8, 2014.  *See Klatte v. Buckman, Buckman & Reid, Inc.*, No. 14-0699, 2014 U.S. Dist. LEXIS 92286, *2-7 (D.N.J. July 8, 2014).  Accordingly, the Court will only recite those facts essential to the issues in these cross-motions.  The following facts are not in dispute except where noted.

Plaintiffs are investors who had accounts with Mercer Capital, LTD ("Mercer Capital"), which were managed by Leonard C. Demers.  Following the suicide of Mr. Demers, on November 27, 2008, Mercer Capital attempted to remain in business.  Defendant's Statement of Material Facts [hereinafter "Def.'s SOMF"] ¶¶ 5, 6.  However, during the following year, Mercer Capital's brokers began resigning and moving to other brokerage firms, and many of those brokers were hired by Defendant BBR.  *Id.* at ¶¶ 7, 10.  In or around late 2009 or early 2010, Mercer Capital

---

[1] Michael A. Klatte, Klatte Golf Limited Partnership, Michael Klatte as beneficiary of the Michael A. Klatte Charitable Remainder Unitrust, Michael A. Klatte Charitable Remainder Unitrust, Michael A Klatte as Trustee and Maker of the Michael A. Klatte Charitable Remainder Unitrust, Klatte Golf Management, Inc., Duane Stolpe and Sheila Stolpe, Duane and Sheila Stolpe as beneficiaries of the Stolpe Charitable Remainder Unitrust, Duane Stolpe IRA, Stolpe Family Limited Partnership, Stolpe Management, Inc. and Stolpe Charitable Remainder Unitrust, collectively, themselves and as assignees for the estate of Leonard C. Demers (collectively "Plaintiffs").

defaulted on many of its obligations, including its lease payments for its office at 40 Wall Street in New York City, New York. *Id.* at ¶ 12.

On January 20, 2010, Mercer Capital provided the holders of its customer accounts with a notification that Mercer Capital had withdrawn its membership from FINRA as a broker-dealer, that BBR had agreed to accept Mercer Capital's customer accounts, and that if account holders did not want their accounts transferred to BBR, they were to provide instruction to Mercer Capital on how they would like their account disposed of. *Id.* at ¶¶ 31-34. The notification letters that Mercer Capital sent to its account holders were silent with respect to the amount of consideration, if any, that Mercer Capital was receiving from BBR for the transfer of the customer accounts. *See* Declaration of Michael D. Handelsman, Esq. (dated August 24, 2015) [hereinafter Handelsman Dec."] ¶ 7, Ex. F.

The parties agree that the account holders were in "complete control" over their accounts, and were under no obligation to maintain their accounts with Mercer Capital or BBR. Def.'s SOMF at ¶ 37. They also agree that Mercer Capital ceased all securities transactions effective February 1, 2010. Pls. SOMF ¶ 78.

The parties further agree that there was no merger, consolidation, or asset sale between Mercer Capital and BBR. Def.'s SOMF 19. However, the parties dispute whether any "transactions of any kind" occurred between BBR and Mercer Capital, or that "nothing of value passed between" Mercer Capital and BBR, with Plaintiffs contending that Mercer Capital's customer accounts had "substantial value" when they were transferred to BBR. *Id.* at ¶¶ 18, 21, 22, 27, 35, 36. Although the parties dispute whether "some" or "most" of Mercer Capital's customer accounts were transferred to BBR, and whether those accounts had any value, it is

undisputed that BBR paid no compensation to Mercer Capital for the transfer of these accounts. *Id.* at ¶¶ 25, 29, 48, 49; Plaintiff's Statement of Material Facts [hereinafter "Pls. SOMF"] ¶ 82.

In April and May of 2009, certain Plaintiffs brought FINRA arbitration actions against Mercer Capital (and others). *Id.* at ¶¶ 54, 57. On December 1, 2010, a FINRA arbitration panel rendered a determination in favor of certain Plaintiffs in the amount of $789,287 against Mercer Capital ("Klatte Arbitration Award"). *Id.* at ¶ 59; *see also* Handelsman Dec ¶ 14, Ex. M. On February 11, 2011, a FINRA arbitration panel rendered a determination in favor of certain Plaintiffs in the amount of $688,126 against the estate of Mr. Demers and $98,303 against Mercer Capital and others ("Stolpe Arbitration Award"). Pls. SOMF at ¶ 56; *see also* Handelsman Dec ¶ 15, Ex. N. The parties agree that BBR did not participate in the arbitrations, is not named in the awards, and was not ordered to pay anything to Plaintiffs. Def.'s SOMF ¶¶ 61, 62.

Plaintiffs initiated the underlying action in this case by Complaint in the State of Minnesota, County of Washington, District Court for the Tenth Judicial District, on October 11, 2013, seeking to enforce against BBR the arbitration awards previously secured before the FINRA arbitration panel against Mercer Capital. Plaintiffs contend that Defendant operates as a mere continuation of Mercer Capital – that it is Mercer's successor in interest. Accordingly, Plaintiffs allege that, under Minnesota state law, the awards against Mercer are enforceable against Defendant and that BBR is responsible for Mercer Capital's fraudulent transfer of their customer accounts.

On November 13, 2013, Defendant removed the underlying action in this case to the federal District Court for the District of Minnesota on the basis of the diversity jurisdiction. On November 25, 2013, Defendant moved for a change of venue, based upon the convenience of the parties,

4

pursuant to 28 U.S.C. § 1404(a). On February 3, 2014, Defendant's motion was granted and the matter was transferred to this Court.

On March 28, 2014, Plaintiffs moved to stay this matter under Section 3 of the Arbitration Act, 9 U.S.C. § 3, which this Court denied as premature on July 8, 2014. On August 24, 2015, the parties filed the instant cross-motions for summary judgment (for Defendant) and partial summary judgment (for Plaintiff). Specifically, Defendants moves for summary judgment on all counts. Plaintiff moves for summary judgment on counts II and III, and on the issue of liability with respect to the constructive fraud claim asserted in Count I. Plaintiff does not move for summary judgment on its claims for actual (and common law) fraud in Count I.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence – more than a scintilla but less than a preponderance – which supports each

element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322; *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. Appx. 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. DISCUSSION

#### A. Choice of Law: New Jersey or Minnesota

This matter was originally filed in Minnesota state court, and then removed to the United States District Court for the District of Minnesota. Following removal, Defendants successfully moved to transfer this matter to the District of New Jersey. When "[f]aced with a choice-of-law question, federal courts in the district to which the case has been transferred under § 1404(a) must apply the law of the transferor state." *Lafferty v. Gito St. Riel*, 495 F.3d 72, 76-77 (3d Cir. 2007). However, this does not mean that this Court must automatically apply Minnesota substantive law in this dispute – instead, it means that this Court must apply Minnesota's choice-of-law rules to determine which state's substantive law to apply. *See Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011).

"The first consideration under Minnesota's choice of law rules is whether an actual conflict exists between the laws of the different states." *Archer Daniels Midland Co. v. Aon Risk Servs.*, 356 F.3d 850, 854 (8th Cir. 2004) (citing *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn. 1994)). "If the choice of one state's laws over the other does not create an actual conflict, there is no choice of law issue to be decided." *Id.* (citing *Vetter v. Sec. Cont'l Ins. Co.*, 567 N.W.2d 516, 521-22 (Minn. 1997)). In other words, "[i]f the Court concludes that there is no actual conflict between the laws of two states, the inquiry proceeds no further and the Court applies the law of the forum." *Minn. Pipe & Equip. Co. v. Ameron Int'l Corp.*, 938 F. Supp. 2d 862, 871 (D. Minn. 2013).

Here, there is no conflict between the laws of New Jersey and Minnesota in this matter. In Count I of the Complaint, Plaintiffs allege violations of the Minnesota Uniform Fraudulent Transfers Act and common law fraud. Both New Jersey and Minnesota have adopted the relevant Uniform Fraudulent Transfer Act provisions referenced in the Complaint,[2] and both states' causes of action for common law fraud are substantially similar. *Compare Meecorp Capital Mkts., LLC v. Oliver*, 776 F.3d 557, 562 (8th Cir. 2015) (listing five elements of fraud action under Minnesota law), *with Johnson v. Draeger Safety Diagnostics, Inc.*, 594 F. Appx. 760, 766 (3d Cir. 2014) (listing five elements of fraud action under New Jersey law), *cert. denied*, __ U.S. __, 136 S. Ct. 53 (2015). In Count II of the Complaint, Plaintiffs allege that Defendant is responsible for the arbitration awards against Mercer Capital based on the theory of successor liability, for which both states follow the "traditional rule" with the same four exceptions. *Compare Fink v. EdgeLink, Inc.*, 553 F. Appx. 189, 193 (3d Cir. 2014), *with T.H.S. Northstar Assocs. v. W.R. Grace & Co.*,

---

[2] *Compare* Minn. Stat. § 513.44(a), *with* N.J.S.A. 25:2-25; *compare* Minn. Stat. § 513.45(a), with N.J.S.A. 25:2-27(a); *and compare* Minn. Stat. § 513.47(a)(1), *with* N.J.S.A. 25:2-29(a)(1).

7

840 F. Supp. 676, 678 (D. Minn. 1993). Finally, in Count III of the Complaint, Plaintiffs assert a claim of breach of contract, a claim on which New Jersey and Minnesota law do not differ. *See Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC*, 877 F. Supp. 2d 140, 148-49 (D.N.J. 2012) ("[T]here is no true conflict between New Jersey law and Minnesota law with regard to breach of contract").

Accordingly, since there is no conflict between the laws of New Jersey and Minnesota, and this matter was originally filed in Minnesota, this Court will apply Minnesota law to Plaintiffs' claims. *See State Farm Fire & Cas. Co. v. Holmes Prods.*, 165 F. Appx. 182, 185 n.1 (3d Cir. 2006) (applying Pennsylvania substantive law, even though appeal arose from New Jersey court, because action was originally filed in Pennsylvania and no conflict existed between the two states' laws).

**B.     Count I – Fraud**

As a preliminary matter, the Court notes that although Count I of the Complaint appears to assert fraud claims under both Minnesota's Uniform Fraudulent Transfer Act ("MUFTA"), Minn. Stat. §§ 513.41- 513.51 (2014),[3] and common law, the Complaint does not actually reference the elements of its common law claim. *See* Compl. ¶¶ 43-49. Moreover, neither party addresses Plaintiffs' apparent assertion of a common law fraud claim in their briefing. The Minnesota Court of Appeals has observed that "[a] claim for actual fraud brought under the MUFTA [Minn. Stat. § 513.44(a)(1)] is a cause of action that existed at common law," and, therefore "[a]n actual-fraud

---

[3] The MUFTA was enacted in 1987, but was amended in 2015 by the Minnesota Uniform Voidable Transactions Act ("MUVTA"), Minn. Stat. §§ 513.41-.51 (Supp. 2015). *See Landmark Cmty. Bank, N.A. v. Klingelhutz*, No. A15-0980, 2016 Minn. App. LEXIS 9, *2 n.1 (Minn. Ct. App. Feb. 1, 2016). The MUVTA does not apply in this matter "because the effective date and application of the amendments [of the MUVTA] do not apply to a transfer made before August 1, 2015." *Id.* (citing 2015 Minn. Laws, ch. 17, § 13).

8

claim brought under the MUFTA is based on a codification of common law[.]" *Finn v. Alliance Bank*, 838 N.W.2d 585, 594-95 (Minn. Ct. App. 2013), *aff'd in part on other grounds*, 860 N.W.2d 638 (Minn. 2015); *see also Phillips v. Phillips*, No. A13-0699, 2014 Minn. App. Unpub. LEXIS 190, *10 (Minn. Ct. App. Mar. 10, 2014) ("The MUFTA largely codifies claims that existed at common law and/or under its precursor, the Uniform Fraudulent Conveyance Act."). Based on the foregoing, this Court will analyze Plaintiffs' common law and statutory fraud claims (with respect to actual fraud) in tandem within the rubric of MUFTA's provision concerning actual fraudulent transfers. Minn. Stat. § 513.44(a)(1).

The MUFTA was "[d]esigned to 'prevent debtors from placing property that is otherwise available for the payment of their debts out of the reach of their creditors[.]'" *Finn v. Alliance Bank*, 860 N.W.2d 638, 644 (Minn. 2015) (quoting *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 60 (Minn. 2014)). The "MUFTA allows creditors to recover assets that debtors have fraudulently transferred to third parties." *Finn*, 860 N.W.2d at 644. "To cover the variety of situations in which debtors may attempt to place assets beyond the reach of creditors, MUFTA allows creditors to recover assets that a debtor transfers with fraudulent intent, Minn. Stat. § 513.44(a)(1), as well as those transfers that the law treats as constructively fraudulent, *see* Minn. Stat. §§ 513.44(a)(2), 513.45." *Id.*

        **1.**    **Transfer of Assets**

Defendant first argues that Plaintiffs' fraud claims must fail because there was no "transfer" of any asset from Mercer Capital to BBR; specifically, Defendant argues that the handover of Mercer Capital's customer accounts, its employees, and the building and furniture it leased at the 40 Wall Street office do not satisfy the definition of a "transfer" under the MUFTA, because Mercer Capital did not "own" any of those assets. Def. Br. 9-13. Plaintiffs apparently concede

9

that Mercer's office at 40 Wall Street, which was leased by Mercer (along with its furniture), and Mercer's employees do not constitute "assets" under the MUFTA because they were not the "property" of Mercer. Pls. Reply Br. at 4-8; Def.'s SOMF ¶ 15. However, Plaintiffs dispute whether the customer accounts, along with the attendant "customer information, the right to manage customer accounts, and customer relationships," were assets of Mercer Capital that were transferred to BBR. Pls. Reply Br. at 8.

Under both types of fraud claims, it is a prerequisite that a "transfer" be made (or, although not relevant here, an "obligation incurred") that is alleged to be either fraudulent or constructively fraudulent. *See* Minn. Stat. §§ 513.44, 513.45. The MUFTA defines "transfer" broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with *an asset or an interest in an asset*, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Minn. Stat. § 513.41(12) (emphasis added); *see Reilly v. Antonello*, 852 N.W.2d 694, 699 (Minn. Ct. App. 2014). The MUFTA defines an "asset," with certain exceptions not relevant here, as "property of a debtor." Minn. Stat. § 513.41(2). "Property" is anything that may be subject of ownership. Minn. Stat. § 513.41(10).

Plaintiffs concede that Mercer Capital did not "own" its customers' accounts, but rather that each account holder controlled their own account(s). Def.'s SOMF ¶ 37. However, under the MUFTA, a "transfer" includes the disposition of both an "asset" as well as "an interest in an asset." Minn. Stat. § 513.41(12). Clearly, Mercer Capital had some "interest" in its customers' accounts even if, technically, each account was "owned" by the respective account holder. While a customer might chose to leave an investment company and take its account (and assets) elsewhere, it stretches the bounds of reason to argue that an investment company has absolutely no "interest" in those accounts while they were managed by that same company, or that the interest could not be

10

transferred to another investment company. Defendants' argument ignores the plain language of the MUFTA's definition of the term "transfer." Accordingly, Defendants' motion for summary judgment on this basis is denied.

### 2. Actual Fraudulent Transfer

A claim for actual fraud under the MUFTA (and common law) "requires a creditor to prove that the debtor made the transfer with the 'actual intent to hinder, delay, or defraud any creditor of the debtor.'" *Finn*, 860 N.W.2d at 645 (quoting Minn. Stat. § 513.44(a)(1)); *see Meecorp Capital*, 776 F.3d at 562 (common law fraud claim requires plaintiff to show false representation made with knowledge and "intention to induce action in reliance thereon"). "Whether a debtor made a transfer with fraudulent intent is ordinarily a question of fact[,] [b]ut when no genuine issue of material fact exists, the district court may decide the question as a matter of law on a motion for summary judgment." *Brown*, 849 N.W.2d at 65.

"Because actual intent to defraud a creditor is rarely susceptible of direct proof, . . . a creditor may rely on various 'badges of fraud,' . . . to prove a debtor's fraudulent intent." *Finn*, 860 N.W.2d at 645 (citation omitted). The MUFTA sets forth a non-exhaustive list of eleven so-called badges of fraud as "factors" that courts may consider "[i]n determining actual intent under subsection (a)(1)." Minn. Stat. § 513.44(b). Those factors are:

> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;
>
> (3) the transfer or obligation was disclosed or concealed;
>
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) the transfer was of substantially all the debtor's assets;

>   (6) the debtor absconded;
>
>   (7) the debtor removed or concealed assets;
>
>   (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
>   (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
>   (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
>   (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Minn. Stat. § 513.44(b).

Plaintiffs argue that there are material disputes of fact that would prevent this Court from granting summary judgment on this aspect of its fraud claims, and that there are six "badges of fraud" present in this matter that weigh in favor of finding that Mercer Capital and BBR possessed actual intent to defraud Plaintiffs: (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; and (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. *See* Pls. Opp. Br. 10-19.

"The presence of a single badge of fraud may, but does not necessarily, prove fraudulent intent." *Brown*, 849 N.W.2d at 66 (citation omitted); *see also In re Sherman*, 67 F.3d 1348, 1354 (8th Cir. 1995). "The presence of several badges of fraud, however, creates an inference of fraud

that requires clear evidence of a legitimate purpose to rebut." *Brown*, 849 N.W.2d at 66 (citation omitted).

While Defendant posits that only that Factor 4 (that the alleged transfer of customer accounts was made after Mercer Capital was sued) is present in this matter, Def. Br. at 23, it appears that factors 3 and 5 are not factually in dispute, as well. With respect to Factor 3, the parties agree that Plaintiffs received notice of the transfer of customer accounts to BBR, and there is also no dispute that the notification letters were silent as to whether the accounts were to be transferred without any consideration. *See* Handelsman Dec. ¶ 7, Ex. F. With respect to Factor 5, Defendant argues only that there was no transfer of assets, an argument which this Court has already disposed of above. *See* Sec. III.A.1, *supra*. Similarly, although Plaintiff maintains that Mercer Capital concealed assets (Factor 7), the only evidence they point to is the testimony of a representative of Mercer Capital, who they claim stated that there would be sufficient assets and insurance coverage to satisfy the arbitration awards. Pls. Opp. Br. at 14-15. The Court agrees with Defendant that this assertion, that Mercer Capital misrepresented that it had *more* resources than it in fact did, cannot satisfy this factor.

However, with respect to Factors 8 and 9, the parties dispute the underlying facts of each, which prevents the Court from fully analyzing the issue at this stage of the litigation. With respect to Factor 8, "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred," Minn. Stat. § 513.44(b)(8), is squarely in dispute. Defendant contend that the customer accounts were "essentially worthless," Def. Br. at 9, and Plaintiffs contend that when those accounts were at Mercer Capital, it was able to remain profitable and, accordingly, those accounts must have had value. Pls. Opp. Br. at 15-17. Indeed, the question is more complicated than merely measuring

the amount of each account's balance.[4] On the one hand, these "orphaned accounts" could indeed be "essentially worthless," as Defendant argues, as they might only constitute "a liability for whomever took the accounts,'" Def. Br. at 5, without ever becoming profitable for the investment company due to the low level of funds invested. On the other hand, each of these accounts carried with it not only a customer relationship (and customer information), but also the *potential* that its owner could decide to deposit substantial funds into their account at some point in the future. Similarly, a factual dispute also exists with respect to Factor 9, as parties dispute whether Mercer Capital became insolvent shortly after the alleged transfer, with Defendant arguing that "Mercer Capital was insolvent for years prior to the transfer of Plaintiffs' account to BBR," Def. Br. 21-22, and Plaintiffs arguing that Mercer Capital was not rendered insolvent until February 1, 2010, following the transfer of the customer accounts to BBR, Pls. Opp. Br. 18-19.

Based on the foregoing, the Court agrees with Plaintiffs that genuine disputes of material facts exist concerning the existence of the "badges of fraud" set forth in Minn. Stat. § 513.44(b) and, consequently, whether the transfer of customer accounts from Mercer to BBR was made with an actual intent to defraud Plaintiffs. Accordingly, the Court will deny Defendant's motion for summary judgment on Plaintiffs' claim of actual fraud under the MUFTA (and common law fraud) in Count I of the Complaint.

### 3. Constructive Fraudulent Transfer

Unlike a claim for actual fraud, a claim for constructive fraud under the MUFTA "does not require proof of fraudulent intent." *Finn,* 860 N.W.2d at 645. Instead, a creditor must prove that the debtor made the allegedly fraudulent transfer:

---

[4] At the time of the transfer, the Klatte Gold Partnership's account held only "virtually worthless warrants," Duane Stolpe's IRA had a balance of $0.00, and Duane and Sheila Stolpe's general account held $1,070.70 in equities. Def.'s SOMF ¶¶ 38-40.

14

> [W]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Minn. Stat. § 513.44(a)(2); *see also id.* at § 513.45(a) (stating that a transfer is fraudulent "as to a creditor whose claim arose before the transfer was made" if there was no "reasonably equivalent value" for the transfer and "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer"). "Thus, a claim for constructive fraud turns on a creditor's ability to show that the debtor made the transfer 'without receiving reasonably equivalent value,' and that the debtor was insolvent, or the transfer made the debtor insolvent or unable to pay its debts." *Finn*, 860 N.W.2d at 645 (citing Minn. Stat. §§ 513.42, 513.44(a)(2), 513.45(a)).

As with Plaintiff's claim for actual fraud, the factual dispute that exists concerning whether the customer accounts had any value prevents either party from obtaining summary judgment on Plaintiff's claim for constructive fraud. Although Defendant's intent is not an element of MUFTA's constructive fraud claim, the parties clearly dispute (1) whether the customer accounts Mercer Capital transferred to BBR had any value and, therefore, whether they were transferred "without receiving a reasonably equivalent value in exchange for the transfer or obligation," Minn. Stat. § 513.44(a)(2); and (2) whether Mercer Capital "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." Minn. Stat. § 513.45(a). *See* Sec. III.A.2., *supra*. Accordingly, neither party is entitled to summary judgment, because neither can

definitively show that Mercer transferred the customer accounts to BBR "without receiving a reasonably equivalent value in exchange for the transfer."[5]  Minn. Stat. § 513.44(a)(2).

Accordingly, the Court will deny both parties' cross-motions for summary judgment on Plaintiffs' claim for constructive fraud under the MUFTA in Count I of the Complaint.

### C. Successor Liability

The parties have also cross-moved for summary judgment on Count II of the Complaint, in which Plaintiffs assert that Defendant is liable as a successor corporation of Mercer Capital. Minnesota follows the "traditional rule" of successor liability:

> Where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*T.H.S. Northstar Assocs.*, 840 F. Supp. at 678 (citing *Niccum v. Hydra Tool*, 438 N.W.2d 96, 98 (Minn. 1989)).

Plaintiffs argue that Defendant is a successor in interest with respect to Mercer Capital's transfer of assets based only on the fourth exception, asserting that the transfer of Mercer Capital's assets to BBR was entered into fraudulently.  Pls. Opp. Br. 21-22.  However, the Court has determined that it cannot award summary judgment to either party on Plaintiff's fraud claims, particularly since the issue of fraudulent transfer is in dispute.  Therefore, the Court must also deny Plaintiffs' motion for summary judgment on Count II.

---

[5] Plaintiff argues that summary judgment should be granted on the issue of liability, and its claim for constructive fraud should proceed to trial only as to the value of the customer accounts at issue.  However, the threshold question for liability for Plaintiffs' constructive fraud claim is whether the transfer was made "without receiving a reasonably equivalent value in exchange for the transfer."  Minn. Stat. § 513.44(a)(2).

Defendant argues that it is entitled to summary judgment on Count II because no transfer of assets occurred. Def. Br. at 28-29. As discussed in more detail above, an interest in an asset was transferred between Mercer and BBR and, accordingly, the Court must also deny Defendant's motion for summary judgment on Count II. *See* Sec. III.A.1, *supra*.

### D. Breach of Contract

With respect to Count III, breach of contract, Plaintiffs merely assert that "once defendant is held liable as a successor corporation, this Court should also hold defendant liable as a matter of law for breach of contract under Count III of the Complaint" because "[i]t is undisputed that the arbitration awards remain unsatisfied." Pls. Br. at 19. Defendant similarly argues that it is entitled to summary judgment on Count III because BBR was not a party to the original arbitrations. Def. Opp. Br. at 33-34. These arguments fail because both hinge on the assumption that the Court would grant summary judgment to either party on Count II, which has not occurred. Accordingly, both parties' motions for summary judgment on Count III of the Complaint are denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED, and Plaintiff's cross-motion for partial summary judgment is DENIED.

Dated: March 21, 2016

/s/ The Honorable Freda L. Wolfson

United States District Judge